GEORGE F. WILSON *v*. PROPRIETORS OF CENTRAL BRIDGE and others.

A sale by an executor or administrator at private sale of a portion of the inventory of his testate or intestate is not void because made without the direction of the court of probate so to sell, but the portion so sold must be accounted for by him at double its appraised value, unless he can obtain such direction from the court.

The legal holder of stock in a corporation, in whose name the stock stands, may vote thereon at any meeting of the corporation, although he really holds the stock in trust for another person whose name does not there appear, if his *cestui que trust* is satisfied with his vote.

Where a holder of stock in a corporation really holds it in trust for another, but such trust does not appear on the books, and is not disclosed by the trustee, votes of the trustee on such stock, at a corporation meeting, are valid, *at least* where it does not appear that such votes were not in accordance with the wishes of his *cestui*, or that the *cestui* was not content that the stock should stand in the name of the person voting, without any trust being disclosed. (Compare *Hoppin* v. *Buffum, infra* 513.)

It does not require a unanimous vote to surrender the franchises of a corporation. One member cannot by his objections prevent such surrender, if it is the wish of the great majority.

A surrender by a corporation of its franchise must be accepted by the state, before the corporation can be dissolved, but where an act authorizes a certain proceeding to be had *upon the surrender* by a corporation of its franchise, such proceeding may be had as soon as the surrender is made, without waiting for its acceptance by the state.

The holders of a majority of the stock in a corporation known as " The Proprietors of Central Bridge," held their stock in trust for the city of Providence. At a meeting of the corporation, they voted to deed their corporate property to the city of Providence, in consideration of the payment by said city of their debts, (not exceeding $4,000,) and refused to accept an offer of $5,000 made by a third party. *Held,* that the purchase was equitably that of a trustee for himself, and consequently the deed was void.

*Held further*, that said city of Providence, as well as any other stockholder, might lawfully bid for the property of said corporation at any public auction sale thereof.

MOTION to dissolve an injunction heretofore decreed by the court upon a bill in equity filed by the complainant against the respondents. The facts of the case, so far as they are necessary to a proper understanding of the legal questions passed upon in the following opinion, are mainly set forth in the opinion of the court. The proceedings prior to the motion were, in substance, these: For more than half a century previous to the filing of this bill, a corporation incorporated by the name of The Proprietors of the Central Bridge, had maintained under their charter, a toll bridge with a draw, over the Seekonk river, a navigable river within the limits of the State of Rhode Island, the said bridge connecting the City of Providence and town of East Providence. At the May session, 1869, of the General Assembly of the State of Rhode Island, an act was passed by them in the following terms:—

*An Act to authorize the erection of a Bridge across Seekonk River.*

*It is enacted by the General Assembly as follows:—*

SECTION 1. The city of Providence and town of East Providence, upon the surrender and release, by the proprietors of the Central Bridge, so called, of all right and power to maintain a bridge over the Seekonk river, under the act of incorporation, passed at the June session of the General Assembly, A. D. 1792, and of their franchise thereunder, are hereby authorized and empowered to construct and maintain a bridge over said river at or above the site of the Central bridge, so called; and for the purpose of constructing said bridge and maintaining the same as a free public highway for travel over said river, the city of Providence and the town of East Providence are hereby authorized and empowered to appropriate such sums of money as may be required to defray the cost of constructing said bridge.

SEC. 2. Said bridge shall be constructed of such material as the city council of said city and town council of said town of East Providence shall determine; in a substantial manner convenient and safe for public travel, over said river with a draw-

bridge therein of not less than eighty feet wide at each side of said draw, when opened, and located in the main navigable channel of the river, for the safe and convenient passage of all vessels navigating said river through said draw. Said bridge and draw shall be located and constructed under the supervision and control of three reliable persons to be appointed by the Governor, who shall be styled the Central bridge commissioners.

SEC. 3. Said commissioners shall have the entire control of all moneys appropriated by the state towards the erection of said bridge, and shall receive and appropriate such sums as may be appropriated by said city of Providence and the town of East Providence towards the erection of said bridge.

SEC. 4. The sum of twenty thousand dollars is hereby appropriated out of any money in the treasury not otherwise appropriated, towards the erection of said bridge.

SEC. 5. The town of East Providence and the city of Providence shall pay the expense of erecting said bridge, over and above the amount herein appropriated by the state law, and shall contribute and pay for the maintenance and support of said bridge, in condition to answer all the purposes for which it is constructed."

After the passage of this act, the Governor appointed three commissioners, who located a bridge in accordance with the provisions of section two of the aforesaid act, over the Seekonk river on the site of the Central bridge, and the proprietors of the Central bridge voted to surrender and release all power to maintain a bridge over the Seekonk river, under their act of incorporation.

Subsequently thereto, a decree was passed upon the application of the complainant, enjoining all the parties respondent from demolishing the bridge maintained by the proprietors of the Central bridge, " and from otherwise interfering with or taking possession of the same or the other estate or property of said bridge corporation, for the purpose of locating upon or using for any other bridge the site of said old Central bridge, until further order."

The respondents now moved that the aforesaid injunction be dissolved.

*B. F. Thurston and Parkhurst, for the respondents, in support of the motion:*—

I. The respondents have in all respects complied with the provisions of chapter 820 of the statutes, in reference to the surrender of their franchise, and their proceedings are in all respects in conformity with law. See chap. 820 of the statutes and the records of the corporation.

II. A majority of sixty-one and one-half out of sixty-four shares, united in making the surrender.

III. The action of the General Assembly has rendered unnecessary any formal acceptance by the state of the act of surrender. See chap. 820 of the statutes, and resolution of January, 1870.

IV. The answer shows that it is absolutely impossible for the corporation to carry on the business authorized by its charter.

V. The great body of the corporation concur in the act of surrender. This is sufficient.

VI. The stock of S. B. Tobey was properly transferred. There was no appeal by law from the permission given by the municipal court to the executors to sell at a given price, other parties whose title is not questioned having agreed to sell at the same price.

VII. The act of a majority in surrendering the franchise and disposing of the corporate property is binding upon the corporation. Angell & Ames on Corp., section 772, 8th ed. *Rex* v. *Miller*, 6 Term, 277 ; *Rex* v. *Haythorne*, 5 B. & C. 412 ; *Rex* v. *Grey*, 8 Mod. 361 ; *Butler* v. *Palmer*, (and other cases cited,) 1 Salk. 191 ; *Newling* v. *Francis*, 3 Term, 196; *Rex* v. *Holland*, 2 East, 72 ; *Rex* v. *Osborne* 4 East, 327 ; *Revere* v. *Boston Copper Co.* 15 Pick. 363 ; *Boston Glass Manuf'g Co.* v. *Langdon*, 24 Pick. 49 ; *Smith* v. *Smith*, 3 Des. 557 ; *Treadwell* v. *Salisbury*, 7 Gray, 404 ; *Lanman* v. *Lebanon Valley R. R. Co.* 30 Pa. 42.

*Bradley and James Tillinghast, for the complainants, contra, in opposition to the motion:*—

I. This motion is based upon an alleged surrender of the char-

ter of the bridge corporation, under the votes of the meeting held August 1, 1870. This surrender was invalid. *a.* Because of the dissent of the complainant. Angell & Ames on Corp. §§ 500, 393 ; *Ward* v. *Society of Attorneys*, 1 Coll. 370 ; *Abbott* v. *Am. Hard Rub. Co.* 33 Barb. 578 ; *March* v. *Eastern R. R. Co.* 43 N. H. 575 ; *Pratt* v. *Pratt*, 33 Conn. 446 ; *N. Orleans, &c. R. R. Co.* v. *Harris*, 27 Miss. 517 ; *N. Y. Marbled Iron Works* v. *Smith*, 4 Duer, 362 ; *Kean* v. *Johnson*, 1 Stockton, 401 ; *Giffard* v. *N. J. R. R. Co.* 2 Stock. 171 ; *Stevens* v. *Rutl. & Burl. R. R. Co.* 29 Vt. 545 ; *Gray* v. *Chaplin*, 2 Sims .& Stu. 267 ; *Cuvier* v. *Santine*, 16 La. An. 27 ; *Polar Star Lodge* v. *Polar Star Lodge*, 16 La. An. 53. Compare statutes conferring jurisdiction to dissolve, on courts, Mass. Gen. Stat. 1860, p. 388, § 35 ; New York, 2 Rev. Stat. 1852, p. 709 ; and other states. *b.* The surrender never has been accepted by the Assembly. Angell & Ames on Corp. § 773 ; *Bost. Glass Co.* v. *Langdon*, 24 Pick. 49 ; *Revere* v. *Bost. Copper Co.* 15 Pick. 351 ; *Heard* v. *Talbot*, 7 Gray, 113 ; *Norris* v. *Mayor, &c. Smithville*, 1 Swan. Tenn. 164. See also, Sched. Gen. Assem. Jan. 1870, pp. 208–9 ; Committee's Rep. Jan. 1870, Appendix No. 14 ; Information by Att. Gen. filed May 23, 1870. *c.* It now appears from their rejection of Wilson's offer of some $1500 more than it is ever pretended the city was to pay, that the other stockholders are not acting *in good faith for the interests of the corporation, or of* the stockholders *as such*, but for some ulterior purpose, and this a court of equity will not allow. *Dodge* v. *Wooolsey*, 18 How. 331 ; *Peabody* v. *Flint*, 6 Allen, 52 ; *March* v. *Eastern R. R. Co.* 40 N. H. 548 ; S. C. 43 N. H. 515 ; *Abbott* v. *Am. Hard Rub. Co.* 33 Barb. 578 ; *Kochler* v. *Black River Falls Iron Co.* 2 Black, 715 ; *Knabe* v. *Lernot*, 16 La. An. 13 ; *Polar Star Lodge* v. *Polar Star Lodge*, 16 La. An. 53. *d.* The corporate action by authority of which it is claimed this surrender and conveyance of the corporate estate was made, *was irregular :* 1 A majority of the stock was not properly represented. Parkhurst's title is one of the questions involved in the case, and to allow him to vote upon it is to *assume that question.* The sale by Tobey's executors is also *lis pendens in this court on the law side.* 2. And whatever title he had—as well as the other stock held by the

other stockholders—was really held *in trust for the city.* Angell & Ames on Corp. § 731; *State* v *Hunton,* 28 Vt. 594.

II. The bill shows a *bona fide* question as to the validity of the deeds of the corporate estate to the city, and therefore according to the general practice the estate should be kept intact till these are determined. Besides the irregularities of the corporate meetings and proceedings, these deeds are void. *a.* The vote of this meeting of August 1st, 1870, expressly confirms the action of the previous meetings and of all acts done under it—thus confirming the conveyance to the city then made without consideration—and if the action of this meeting stands the city *may well claim under that deed alone. b.* However this may be, the deed is without adequate consideration. 1. The principal debt forming the pretended consideration is *the city's own debt.* See affidavits. 2. Wilson's written offer shows the property grossly undersold.

BRAYTON, C. J. The motion made by the defendants is to dissolve the injunction heretofore dereed by this court enjoining them, and each of them, from demolishing the Central Bridge, and from otherwise interfering and taking possession of the same, or the other estates or property of the bridge corporation, for the purpose of locating upon or using for any other bridge the site of said Central Bridge, until further order.

The motion is made in pursuance of the leave given at the time this injunction was ordered, to move its dissolution whenever the defendant corporation should have had a legal meeting. That meeting has now been held, and the corporation has now voted to surrender its franchise to the state, and has executed, on its part, such surrender, and has voted to sell and convey to the city of Providence all their property, being the lands upon which the Central Bridge is built and abutted, and the lands used therewith, with the bridge and the materials of the same remaining. And they now move the dissolution of the injunction against them, in order that the commissioners, appointed by the General Assembly for that purpose, may locate a free bridge, to be built by the city of Providence and the town of East Providence, and that the city and town may proceed to build, under

the authority given them, a free bridge across the Seekonk river. This committee were authorized to locate such free bridge, and the city and town to construct it, only in the contingency that the franchise of this bridge company should be by them surrendered, with all their right to build and maintain the Central Bridge.

There is no objection now made, as heretofore has been, that the meeting was not properly held, upon sufficient notice, and properly organized. It was their annual meeting appointed by the charter. But it is objected that the acts of the company, in disposing of their property and in surrendering the franchise and all right to maintain a bridge over Seekonk river, are nevertheless inoperative and void for various reasons.

1. That a majority of the stock was not properly represented. There were certain shares of stock in this company, thirty-three in number, which had been in his lifetime held by one Samuel B. Tobey, and which on his death, passed to his executors. These shares were sold at private sale by the executors to Charles H. Parkhurst, and the purchase money paid by the city of Providence. This sale, it is objected, is void, because the executors were not directed by the court of probate to sell, and that without it the executors had no power thus to sell.* This objection is based upon the provision of the statute, that unless an executor or administrator sell at public auction, he shall account for the property sold at double its value as appraised in the inventory, unless he shall be directed to sell at private sale by the court of probate. This provision seems to relate to the mode of accounting only. It does not prohibit such sale, nor declare it void, neither expressly, nor does that effect seem to have been intended. The provision for the mode of accounting assumes the sale to be valid. The purchaser is not affected. The effect is upon the executor or administrator only. The validity of the

---

* It was maintained by S. B. Tobey's executors, and contended by the respondents in their argument, that the leave of the court of probate had been duly obtained before the sale, but the court, as will be perceived, did not find it necessary to pass upon this question, it being, in their view of the law, immaterial to the complainant's case, whether leave had been obtained or not.

sale is not affected by the fact that it is still undetermined in the court of probate if the executor shall be directed so to sell. The *lis pendens* is not the question of the validity of the sale, but of the mode of accounting.

2. It is objected that the stock was held in trust for the city of Providence, the legal title being in the stockholders voting, and the legal holders could not rightfully vote upon the shares by them held in trust. To this point the objectors have referred us to Angell & Ames on Corporations, § 131, which does not seem to support the position. That section refers to *Ex parte Holmes*, 5 Cow. 426, in which the court say that the real owner of the stock should vote, especially when his name is truly expressed on the books; though it might *be otherwise*, they say if he chose to have the *entry simply in the name of another*, without *expressing any trust.* But that was stock held in trust for the corporation itself, and the court said that could not be voted upon at all, and could only be voted upon by the other stockholders in proportion to their interest in the corporation. In the case of *State* v. *Hunter*, 28 Vt. 594, the stock proposed to be voted upon was bank stock held in trust for a person not a citizen of the state, and who was for that reason prohibited by statute from holding stock in a bank in Vermont, and the court held that the statute could not be evaded by putting the stock in the name of another, who might be an inhabitant. Even where the trust appears on the books, it is said the trustee cannot vote, *except at the direction* of the real owner. At his direction he may; the implication is that he may. It is not even suggested here that the votes given were not in accordance with the wishes and desire of the real owners, or that they were not content that the stock should stand in the names of the persons who did vote without disclosing any trust. The inference, from all the evidence in the case is, that they were satisfied in both respects.

3. It is again objected, that whatever validity the sale of the property may have, the surrender of the charter of the corporation was void, the vote therefor not having been unanimous; and the objectors say that a surrender cannot legally be made by

any majority, however large, or against the dissent of any one member. The text books state no such rule. So far from it, Angell & Ames, the book referred to, state no such rule and cite no case to any such point. The only case cited touching the question is the case of *Smith* v. *Smith*, 3 Dess. 557, which holds that it would require the assent of the great body of the society, and that the *directors* could not of themselves surrender and dissolve the corporation without the action of the body. Many cases have been cited to the proposition announcing a rule that the business and objects of the incorporation cannot be perverted by a majority. They cannot apply its capital to purposes foreign to those for which the company was incorporated. The nature of the corporation cannot be changed. Such is the case of *Ward* v. *Society of Attorneys*, 1 Coll. 370, strongly urged upon our consideration, where the majority of the stockholders were enjoined from applying to parliament to surrender their charter, in order to be incorporated with their capital for another and different purpose. They were enjoined from proceeding, because it was one to change the nature of the company, to pervert its purpose. So it has been held that an amendment of a charter of incorporation, substantially changing the nature of the corporate body, cannot be accepted by a majority. But it has been held that an amendment to a railroad charter, creating preferred stock entitled to dividends to the exclusion of the original shares, may be accepted by a majority, and that, because, under the circumstances, although it places burdens upon the original shareholder not then contemplated, it was nevertheless the only way to accomplish the original design of the incorporation, namely, to construct and equip the road, and so it was to the interest of the company to accept the terms and the burdens. It was a kind of necessity. No case has been cited, and, in view of the diligence of counsel in this case, we may say there is no case which holds, that where the purpose of the incorporation could not be accomplished, the business contemplated could not be carried on ; where the capital had been exhausted in endeavors to go on, leaving no means to go further ; a company thus laboring under burdens which they could no longer

bear, could not release themselves by a surrender of their franchise to the state which granted and which was willing to receive it, and that by a majority. This is not only for their benefit, but it is a necessity, and it would be hard indeed if one stockholder could by his dissent prevent such relief against the prayer of all other members of the company. It requires some case to hold that one member has this power. That case has not been found. So we think there is no such rule, and are of opinion that the franchise of this company has been on their part lawfully surrendered.

4. It is objected that the surrender has not been accepted by the state, and, until so accepted, is not valid. Undoubtedly the settled rule is that a corporation cannot, even by a unanimous vote, effect its own dissolution without the assent of the legislature of the state creating it, by surrender or otherwise. But the act authorizing the building of a free bridge, and a location of it by the commissioners, upon the surrender by the bridge corporation, did not contemplate any further action of the General Assembly as necessary to the action of the commissioners, or of the city of Providence, or of the town of East Providence. They were to act whenever the company should, on their part, make the surrender, not when it should be formally and thereafter accepted. It was expected that that would be made in the recess of the legislature, as would also be the location, and, it might be, the construction also. The assent of the General Assembly was given in advance. There is nothing to prevent the commissioners from proceeding to locate, or the city from proceeding to build, on the site selected by the commissioners. The corporation, by the surrender of its franchise, has, for the purpose of maintaining a bridge across this river, ceased to exist, and its further existence is only continued by the statute to enable it to dispose of its property, pay its debts, and wind up its affairs. It is now merely the owner of certain real estate upon which its bridge abutted, and some other estate purchased for the convenience of the bridge, and of certain materials that remain of the bridge now gone to decay. We can no longer enjoin the commissioners from proceeding to act, for the contin-

gency has happened upon which they were authorized by the General Assembly to proceed and fix the site of a free bridge. The site being thus fixed by them, we can no longer enjoin the city of Providence, nor the town of East Providence, from pro· ceeding to act under the license granted them by the legislature, if they desire so to do, and to take the necessary steps towards the construction of such bridge. They may purchase the land necessary for the abutments of the bridge proposed, of those owning the banks at the place where the commissioners may have made the location, whether the land of this corporation or of individuals, if they can agree with such owner, or they may purchase the easement over it. Failing in the purchase of the soil, or of the right of way, they may move the exercise of the power, as well of the board of aldermen of the city as of the town council of the town of East Providence, to lay out high· ways on either side of the river down to the river bank and to tide-water, upon which to place their abutments, and to have the lands necessary for the purpose condemned for the public use, under the power to lay out highways, the damage to be assessed and paid by the city and town respectively.

5. There is another objection made, which alone can prevent the entire dissolution of the injunction heretofore ordered against every of the parties defendant and for every purpose. The objection is, that the city of Providence is proceeding to enter upon the estate of this corporation, under the deed executed to it in pursuance of the vote of the corporation passed at the meeting at which the vote of surrender was passed, which vote and the deed thereupon executed, the plaintiff objects, is void as to him. At that meeting a majority of the votes given were given upon stock held by stockholders holding in trust for the city of Providence, to which the conveyance was made. The consideration for the purchase was the payment of the debts of the corporation, the amount not exceeding $4,000. At the meeting, at which this vote was passed, the company were offered for the property the sum of $5,000, which they then re· fused and made the conveyance to the city.

The control of this corporation in the disposition of this prop·

erty, it is quite clear, was in the city, and it is quite as clear that the votes were given in accordance with its wishes and desire. Having this control, and exercising it, they stood in the place of the corporation, acting in the disposition of this property as trustees for sale ; for upon the surrender of its franchise, the property was necessarily to be disposed of for the benefit of all the stockholders.

Now, the equitable rule certainly is, that a trustee cannot pur-chase for himself, even for the best price offered, much less can he buy at a less price than may be had of other persons, and in preference. For this general rule we need not refer to cases, but see *Abbott* v. *American Hard Rubber Company*, 33 Barb. 678. The deed, then, to the city of Providence, can hardly be held valid against the objection of those interested in the trust prop-erty. They have a right in such case to a resale, in order that the best price may be obtained.

We can continue the injunction against the parties only so far as to restrain them from entering upon and taking possession of the property of this corporation under that deed. In doing this, we cannot enjoin the company from proceeding to sell and dispose of its estate and property at a public sale, if they will, with liberty to the city, as to any other stockholders in the cor-poration, to bid at such sale.

*Injunction continued, (modified as above.)*