THE STATE OF VERMONT *ex relatione* SOLON DANFORTH,
LUCIUS L. TILDEN, DUDLEY C. DENNISON, GEORGE S.
HATCH AND JOHN B. HUTCHINSON *v.* AUGUSTUS P. HUN-
TON, LOREN GRISWOLD, MERRICK GAY, GEORGE FRANCIS
AND ROLLIN RICHMOND.

*Practice.   Right to go forward.   Proceedings upon quo war-
ranto.   Right of foreign bank stockholder to vote at election
of directors.*

Upon an information for a writ of *quo warranto* charging the defendants with having
usurped offices which they are in possession of, the presumption is that they are
regularly elected, and entitled to hold them until the contrary is shown. The ap-
plicants, therefore, being bound to make a case against them, should go forward
in the proof and in the argument.

*Quære,* whether, upon an information in the nature of a *quo warranto,* the prosecutor
can, if objection is made, proceed merely by obtaining a rule to show cause, &c.,
or whether he should not follow the English practice, and proceed either by *venire
facias* and *distringas,* or by subpœna and attachment.

The stock of a bank in this state, which is owned by a person residing out of it, can-
not be voted on at the election of directors, though it stands, upon the books of
the bank, in the names of inhabitants of this state, to whom it has been transferred
for the purpose of enabling them to vote upon it.

Question of fact as to the character, in this respect, of a majority of the votes which
were cast against the defendants, in the election of directors of the White River
Bank, examined and determined.

INFORMATION for a writ of *quo warranto,* charging the defend-
ants with having usurped the office of directors of the Bank of
White River, at Bethel, without any legal election, &c.

State ex rel. Danforth et als. *v.* Hunton et als.

A question was made, (after the reading of the information, and rule *nisi* requiring the defendants to show cause why such a writ should not issue, and the defendants' answer, upon oath, to the several charges in the information,) which party was entitled to the open and close, in the proof and the argument:

By the Court. The form of the issue, requiring the defendants to show cause, would seem to indicate, in form, that the defendants would be required to go forward in the case. But it seems to us that the form of the issue in the case does not correctly define the true position of the parties, in regard to the presumption of right. The defendants are in possession of the office in question, and should be presumed regularly, elected and entitled to hold until the contrary be shown. The plaintiffs, then, are bound to make a case against them, and they should go forward in the proof and in the argument.

Several affidavits, taken with notice, were then read, both upon the part of the relators and of the defendants, the substance and purport of which, so far as they related to any of the questions decided, are sufficiently set forth in the opinion of the court, which also sufficiently sets forth the nature of the claims made by the respective parties, and the grounds upon which they were based.

*J. Barrett,* state's attorney, *J. Converse* and *A. Tracy* for the relators.

*Washburn & Marsh, O. Coolidge* and *W. M. Pingrey* for the defendants.

The opinion of the court was delivered by

Bennett, J. The defendants are brought before this court upon a rule to show cause, &c., which was granted by the supreme court at their regular session in Bennington county; and no question has been raised in regard to the regularity of the proceeding, although it seems that in England, upon an information in the nature of a *quo warranto,* the attorney-general must proceed either by *venire facias* and *distringas,* or *subpœna* and *attachment*; and, in *The People* v. *Richardson,* 4 Cowen 100, it was held, in the state of New York, there was no necessity of departing from the

State ex rel. Danforth et als. *v.* Hunton et als.

English practice; yet we are not disposed, as no question has been raised by the defendants, to inquire whether, as matter of practice, our course of proceeding should regularly conform to the English practice, or whether we should be allowed to introduce a practice of our own, differing from the English practice. The defendants do not claim but what this is a proper proceeding to try their right, but their defense is put upon the ground that they were legally elected directors of said bank, and have a right to hold the office of directors, and discharge the duties thereto belonging. No question has been raised as to the legality of the votes cast for the defendants, but the point is, did they have a majority of the legal votes cast at the election? The general banking law of this state, Comp. Stat. p. 489, enacts that no stockholder *residing out of this state* shall, either personally or by proxy, vote in the meetings of the corporation. This provision shows a marked intention on the part of the legislature, that our banks should be controlled only by our citizens, and, probably, for wise purposes. A large majority of the votes were, in point of fact, cast for the relators, and the question is, as to the legality of the votes cast for them. It is an admitted fact that some short time before the meeting of the corporation, John J. Prentiss, a citizen of New Hampshire, advanced to Solon Danforth and others, about the sum of thirty-eight thousand dollars in the whole, which was to be expended in the purchase of stock in the White River Bank, and the money was so expended, and conveyances of the stock were taken to citizens of this state, and, by them parceled out to other citizens, mostly in four shares to each one, the banking law giving to a stockholder of but four shares one vote on each share. The number of votes cast upon stock purchased by Skinner, Danforth and Lyman, with money furnished them by Prentiss, and by them evidently distributed to divers persons for the purpose of increasing the number of votes on the stock, was rising of five hundred. The first question is one of fact. Who was the real and substantial owner of this stock? Did it, in fact, belong to Prentiss, a citizen and resident of New Hampshire? Of this, we can have no reasonable doubt. The money was furnished by Prentiss, with which the stock was to be bought, and we think that the pretence that it belonged to any one else is altogether *colorable.*

It was necessary, to carry out the object, to attempt to give the transaction the character of a loan, and hence we find that when Skinner, Danforth and Lyman received the money of Prentiss, they gave to him their receipt for it, by which they agreed " to account for the money, in stock in the White River Bank, or return the same, on demand." This receipt, in form, gives to Skinner, Danforth and Lyman, the option to account for the money in stock, and we are satisfied, from the whole evidence in the case, that this stock was to be purchased in trust for the benefit of Prentiss, and if not purchased, the money was to be returned to him. The sum advanced was a large one, and it is not usual that so large a sum should be loaned, and nothing said about security, and no price is stipulated at which the stock was to be received. Skinner, in his testimony, admits that Prentiss was to have the stock, if a change in the directors of the bank was effected; and Danforth admits that Prentiss said to them he should like to make the investment *in bank stock*, and that, if the directors were changed, the investment would be a good one, in that bank.

It is evident that Prentiss manifested all the interest of a party in the operation, was counseled by Skinner, Danforth and Lyman, in regard to who should be elected directors, and a ticket was settled upon, which was satisfactory to Prentiss: and the very manner in which the whole business has been transacted, shows that it must have been upon a trust, expressed or implied. No real transaction to so large an amount, among business men, could have been left to so much uncertainty and implication. Prentiss advanced a sum, large enough to give him the major part of the stock, and no one, who has heard the testimony, can doubt but what it was his design to get the control of the bank; and, to effect this, Skinner, Danforth and Lyman, who were his agents, and seem to have lent themselves to aid him in his wishes, parceled out the stock to various persons, in lots of four shares to each, with a design to control the election of directors. That these pretended sales were all a sham, and not *bona fide*, no one can doubt a moment. Nothing has been paid by the pretended vendees, and nothing has been required to be paid by the vendors. The pretended contracts were the same in all cases.

If, then, this stock, which in fact belonged to Prentiss, had stood

in his name, it was not stock which could be voted on; and shall it be said that the effect of the statute can be avoided, by having the stock conveyed to persons in this state, to hold it in trust for the use of Prentiss? To allow this, would be to allow a *fraud* upon the law to prevail, and this is never to be tolerated. Suppose two of our own citizens were to go into the state of New York to make a loan of money, for the sole purpose of securing upon the contract interest at the rate of 7 per cent, our courts would regard it as a Vermont transaction, to prevent a fraud upon the law.

The law is not to to be outwitted by *cunning devices.* So in this case, the stock belonging, in fact, to Prentiss should not be allowed to be voted on, though conveyed to citizens of this state, in trust, and for the purpose of being voted on. Rejecting the votes, then, cast upon the Prentiss stock, no question is raised but what the defendants were duly elected directors, they having a majority of the legal votes. We think the relators have failed to make out a case, and the proceeding is dismissed, but without costs.