THE STATE ex rel. FRANK et al. v. SWANGER, Secretary of State.

In Banc, October 25, 1905.

1. **CORPORATION: Preferred Stock: Voting Power.** It is competent for the articles of association of a corporation to provide that one-half the stock shall be common and the other half preferred, and that the voting power shall be vested exclusively in the common stock, the holders of the preferred "expressly waiving any right to vote the preferred stock at the election of directors or on any question or to participate in stockholders' meetings." Incorporation cannot be denied to a company because its articles contain such a provision.

2. ———: ———: **Public Concern.** Such a provision is but an arrangement between two classes of stockholders that does not concern the public. It does not violate any rule of the common law or any rule of public policy.

Vol 190 mo—36

State ex rel. v. Swanger.

3. ———: ———: **Reasonableness.** Nor is such an arrangement unreasonable. The promise being first to award to the preferred stockholders the net earnings, the holders of the common stock to share in such of the net earnings as they might by good management be able to make over and above the given dividend, the burden is upon them to make the business a success, and the power of management may fairly be left with them, and their interest in the success of the corporation and their liability to first satisfy the preferred stockholders are a sufficient guaranty that they will manage its affairs to the best advantage.

4. ———: ———: **Matter of Agreement.** Such an arrangement being a matter of convention between the stockholders, and not being violative of any rule either of the common law or of public policy, will not be held to be illegal unless it violates some express provision of the organic or statutory law.

5. ———: ———: **Constitution.** A provision in the articles of association vesting the holders of the common stock of a corporation with the exclusive power of voting and excluding the holders of preferred stock, though one half of the whole, from any participation in the election of directors and from participating in stockholders' meetings, is not prohibited by the clause of the Constitution that says "that each stockholder shall have the right to cast as many votes as shall equal the number of his shares." The purpose of that clause was to introduce the principle of cumulative voting in the election of directors, so as to secure to the minority stockholders a voice in the management of its affairs, in the proportion to the number of shares held by each, thereby supplanting the common law right of a stockholder to vote one vote irrespective of the number of shares held by him. That clause means that every stockholder entitled to vote may. vote his stock on the cumulative plan. It has no reference to the contractual right of the stockholders *inter sese*.

6. ———: ———: ———: **Life of Law.** The reason for a law is its life.

7. ———: ———: ———: **Purpose.** In construing a law, courts look to the purpose had in view when it was enacted.

## Mandamus:

PEREMPTORY WRIT AWARDED.

*J. C. Harper, D. W. Voyles* and *Silver & Brown* for relators.

(1) The Constitution recognizes preferred stock, but provides that it shall not be issued without the consent of all the stockholders. Art. 12, sec. 10. This requirement is complied with in the case at bar. (2) At common law, it was well recognized that the voting power might be withheld from the preferred stock and vested exclusively in the common stock. In England and in this country the limitation of its voting power was one of the well-recognized characteristics of preferred stock. Cook on Corp. (5 Ed.), sec. 622b; Clark & Marshall, Priv. Corp., sec. 652; Campbell v. Poultney, 6 Gill & J. 94; Webb v. Ridgley, 38 Md. 364; Mack v. DeBardleben, etc., Co., 90 Ala. 410; Com. v. Detweiler, 131 Pa. St. 614; State v. Hunton, 28 Vt. 594; In re Steel Co., L. R. 39 Ch. Div. 603; Miller v. Ratterman, 47 Ohio St. 157. In Ohio there existed the same cumulative-voting law as is found in Missouri. Sec. 3245, R. S. Ohio, as amended April 23, 1898—61 Ohio St. 497. (3) In order to deprive stockholders of their common-law right to contract as to which class of stock and under what conditions it shall possess the voting power, there should be a clear and express legislative intention to take away such right. On the contrary, the Missouri statute of 1901 expressly recognizes the right of the stockholders to determine the "character" of the stock, whether voting or non-voting. Laws 1901, p. 91. (4) The cumulative-voting provisions of the Constitution and statutes of Missouri in nowise militate against this view. Clark & Marshall, Priv. Corp., sec. 655; State ex rel. v. McGann, 64 Mo. App. 232; Wright v. Water Co., 67 Cal. 535. (5) This court has recently had before it the question whether another section of the article of the Constitution dealing with corporations should be given a literal application in every case, or whether it should

be given a common sense meaning and made to subserve the purpose of its being. Section 8 requires that sixty days' notice must be given before a corporation can increase its stock or bonded indebtedness. It was contended that this provision was for the public benefit and could not be waived by the stockholders. This court, though, held that the provision was for the benefit of the stockholders alone, and could be waived by them. Riesterer v. Land & Lumber Co., 160 Mo. 141, overruling State ex rel. v. McGrath, 86 Mo. 241; State ex rel. v. Cook, 178 Mo. 189. (6) "The method of voting prescribed in the charter is part of the contract between stockholders. It relates to the manner of controlling the association and its property represented in their shares as between themselves. It in nowise affects the public." Re Newark Library Assn., 64 N. J. L. 219; State ex rel. v. Greer, 78 Mo. 188; Printing, etc., Co. v. Sampson, L. R. 19 Eq. 465; Besant v. Wood, L. R. 12 Ch. Div. 605; Smith v. Railroad, 115 Cal. 600; State v. Tie and Timber Co., 181 Mo. 536; Rumsey v. Railroad, 154 Mo. 246. (7) Mandamus is the proper remedy. State ex rel. v. Cook, 178 Mo. 189.

*Herbert S. Hadley,* Attorney-General, *John Kennish,* Assistant Attorney-General, and *W. C. Irwin* for respondent.

(1) This is not a question solely of the rights of the incorporators *inter sese,* in which the public is not concerned, but rather a question in which the public is vitally concerned and has rights that cannot be overlooked. Secs. 1, 8 and 10, art. 12, Const.; secs. 947, 953, R. S. 1899. (2) The question arises, Can a majority of the stockholders set aside and annul the plain provisions of the statute (sec. 953, R. S. 1899), and thereby deprive any of its shareholders, whether the holders of common or preferred stock, of the right to participate in the bus-

iness affairs of the corporation? Tomlin v. Bank, 52 Mo. App. 430; State ex rel. v. McGann, 64 Mo. App. 225; Gregg v. Granby Min. & Smelt. Co., 164 Mo. 625; Clark & Marshall, Corp., p. 1997. (3) The Secretary of State should not be required to pass upon the legality of any contract interested parties may seek to insert in the articles of association for the incorporation of any company, but he must see that the law is complied with.

GANTT, J.—This is an original proceeding brought by the plaintiffs, in this court at its April term, 1905, to obtain a peremptory writ of mandamus directed to Hon. John E. Swanger, Secretary of State, requiring him to issue a certificate of incorporation to the "Star-Chronicle Publishing Company." The petition, omitting caption, is in the words following; "Your petitioners Nathan Frank, Milton A. McRae, J. C. Harper, Robert F. Paine, F. W. Hunsicker, August, Frank and John M. Hertel (relators herein), state and say as follows: That John E. Swanger is now and has been, since on or about January 1, 1905, the Secretary of the State of the State of Missouri, duly qualified and acting as such officer. That on the 2nd day of June, 1905, last past, your petitioners did execute articles of agreement for the incorporation of a business corporation (pursuant to and under article 9 of chapter 12 of the Revised Statutes of 1899 of this State), under the name and style of the 'Star-Chronicle Publishing Company.' That said articles of agreement duly set forth the said name of the contemplated corporation, the place of its location, viz., in the city of St. Louis, Missouri; the names and places of residences of the several shareholders; the number of the board of directors (consisting of seven shareholders) and their names for the first year after the incorporation; the duration of the corporation, viz., for a term of fifty years; the purpose of the corporation, viz., the printing and publishing of one or more news-

papers, magazines and other publications and all business usually connected therewith; amount of capital stock of the intended corporation, viz., $500,000, divided into shares of the par value of one hundred dollars each, that the same was bona fide subscribed and all thereof actually paid up in lawful money of the United States, and that the same was in the custody of the persons named in said articles of agreement as the first board of directors of said proposed corporation, they being the same persons as your petitioners herein.

"That said articles of agreement further provide that 2,500 of said shares shall be preferred stock, and that the remaining 2,500 shares shall be common stock.

"That the holders of said common and preferred stock shall have the preference, classification, character and rate of dividends as follows: 'The holders of the preferred stock shall be entitled to receive out of the surplus or net earnings, and the corporation shall be bound to pay thereon as and when declared by the board of directors, a dividend at the rate of six per centum per annum, cumulative from and after the issue of such stock, payable monthly unless otherwise ordered by the board of directors, before any dividend shall be set apart or paid on the common stock; provided, however, that after the payment in full of all dividends on the preferred stock, and so long as a dividend of six per cent is paid each year on the preferred stock, the directors shall have the power then and thereafter to declare and pay from the net earnings, dividends on the common stock until it has received the same amount of dividends as have been paid on the preferred stock, and no further dividend shall be paid on the preferred stock until the common stock has received an equal amount of dividends, calculated cumulatively from the date of the issue of stock, and thereafter the preferred and common stock shall be entitled to share ratably in all dividends declared in excess of the preferential divi-

dend of six per cent to be paid on the preferred stock and a like amount on the common stock; provided, always, that dividends may be declared from the net earnings only, and from such net earnings the preferred stock shall receive preferentially and cumulatively a dividend of six per cent per annum, and the common stock shall at no time be entitled to a dividend until all arrearages of such dividends have been paid to the holders of the preferred stock. The voting power shall be vested exclusively in the common stock, and at all meetings of the stockholders, and at all elections for directors, each holder of common stock shall be entitled to one vote for each share of common stock held by him and registered on the books of the company; and the preferred stock shall have no voting power, the holders thereof expressly waiving any right to vote the preferred stock at elections for directors or on any question, or to participate in stockholders' meetings.'

"That said articles of agreement were on the second day of June, 1905, last past, duly subscribed and acknowledged by your petitioners, before Laura L. Sutton, a notary public for and within the city of St. Louis aforesaid, and after being so subscribed and acknowledged, said articles were, on June 5, 1905, filed in the office of Paul Young, Jr., recorder of deeds for the said city of St. Louis, and were, by said recorder on said day last aforesaid, recorded in corporation book 28, page 207, of said recorder's office. That a duly certified copy of said articles of agreement, as recorded in the office of said recorder of deeds of the city of St. Louis, are attached to this petition, marked 'Exhibit A.'

"That thereafter, and on June 5, 1905, your petioners did present to and file in the office of said John E. Swanger, Secretary of State, aforesaid, a copy of said recorded articles of agreement, duly certified to by the recorder of deeds of the city of St. Louis, and did tender at the same time the sum of $277.50, as the nec-

essary incorporation fees in the premises, and did request the said John E. Swanger, as Secretary of State aforesaid, to issue a certificate that said corporation, contemplated in the articles of agreement aforesaid, viz., of the Star-Chronicle Publishing Company, was duly organized, with the amount of its capital stock.

"That notwithstanding the premises herein and the provisions of section 1314 of the Revised Statutes of 1899 of this State, the said John E. Swanger, as said Secretary of State aforesaid, did decline and refuse to issue and does still decline and refuse to issue said certificate of corporation as requested by your petitioners. That under and by virtue of the provisions of article 9, chapter 12, of the Revised Statutes of 1899, and of other provisions of said statutes and of the Constitution of the State applicable to the premises herein, it was the legal duty of said John E. Swanger as said Secretary of State aforesaid, to issue said certificate of incorporation as required by your petitioners. Wherefore, your petitioners, being without other adequate remedy, pray the issuance by the Honorable Supreme Court of Missouri of an alternative writ of mandamus directing the said John E. Swanger, as said Secretary of State aforesaid, to issue said certificate of incorporation hereinbefore referred to or to show cause at some early day, to be named by this court, why he has not done so, and your petitioners pray for such other and further relief to which, by reason of the premises, they may be entitled."

The respondent entered his voluntary appearance by the Attorney-General and filed a demurrer to the alternative writ, on the ground that the petition and alternative writ did not state facts sufficient in law or equity to entitle the petitioners to the relief sought.

The cause was heard orally and by briefs, at the April term, 1905, and a judgment rendered awarding a peremptory writ of mandamus, but for want of time no

written opinion was filed, and this opinion is now handed down, expressing our reasons for granting the writ.

I. The refusal of the Secretary of State to grant a certificate of incorporation is based upon the following provisions in the third clause of the articles of incorporation, to-wit: ''The voting power shall be vested exclusively in the common stock, and at all meetings of the stockholders and at all elections for directors, each holder of common stock shall be entitled to one vote for each share of common stock held by him and registered on the books of the company; and the preferred stock shall have no voting power, the holders thereof expressly waiving any right to vote the preferred stock at elections for directors or on any question, or to participate in stockholders' meetings.''

It is insisted by the Secretary of State that the above provision in the articles is in violation of the Constitution and laws of this State. The sections of the Constitution and of the Revised Statutes of this State invoked by him in justification of his refusal to approve the articles are these:

Section 6 of article 12 of the Constitution provides as follows: ''In all elections for directors or managers of any incorporated company, *each shareholder* shall have the right to cast as many votes in the aggregate as shall equal the number of shares so held by him or her in the said company.''

Section 8 of article 12 of the Constitution provides, in part, as follows:

''The stock and bonded indebtedness of corporations shall not be increased, except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of stock first obtained at a meeting called for that purpose.''

Section 10 of article 12 of the Constitution provides as follows:

"No corporation shall issue preferred stock without the consent of all the stockholders."

Section 947, Revised Statutes 1899, provides, in part, as follows:

"And *all* shares that may appear standing thereon in the name of *any person* or *persons* shall be voted by such person or persons, directly by themselves or by proxy. Persons holding stock as executors, administrators, guardians or trustees, or who have pledged their stock, shall be entitled to vote upon such stock."

Section 953, Revised Statutes 1899, provides as follows:

"In all elections of directors or managers of any incorporated company, *each shareholder* shall have the right to cast as many votes in the aggregate as shall equal the number of shares of stock so held by him or her in said company."

An examination of these several provisions of our organic and statutory laws and others *in pari materia* in the light of accepted common-law principles, must determine this controversy.

"At common law it was and is legal, upon issuing preferred stock, to impose a condition that such stock shall not have a right to vote. There is no rule of public policy which forbids a corporation and its stockholders from making any contract they please in regard to restrictions on the voting power." [2 Cook on Corporations (5 Ed.), sec. 622b; Clark & Marshall, Private Corporations, p. 1320.]

The decided cases support this statement of the law. In In re Barrow Haematite Steel Co., L. R. 39 Ch. Div. 582 (1888), at p. 603, NORTH, J., said:

"Again, it is said to be unfair that preference shareholders should be affected by the passing of resolutions [to reduce the capital stock] by the votes of ordinary members of the company, the preference shareholders themselves being excluded by contract from any

power of voting. I think the answer is, that it is by contract that they are excluded—it is part of the bargain with them. They were content to take their shares subject to the regulations of the company, although they knew that those regulations might be altered by the votes of the persons whose votes they could not influence—at any rate directly—by taking part in the voting themselves. I do not, therefore, see that what is proposed is in any way inequitable or unjust, and my view is confirmed by this fact, that a very large majority of the preference shareholders themselves are of the same opinion."

In Miller v. Ratterman, 47 Ohio St. 141 (1890), at p. 157, the court said: "It [the resolution authorizing the preferred stock] further stipulates that the holders of the certificates of stock shall not have or exercise the right to vote the same at the meeting of the stockholders of the company, thus indicating that it was stock they intended to authorize the issue of, and not certificates of indebtedness, for the inhibition against voting would be wholly useless had it been intended that the holders should become creditors. *The provision is not unusual.* Nor is it in this instance unreasonable. The promise to the preferred stockholders was to award them the first net earnings, the holders of the common stock to share in such of the net earnings as they might, by good management, be able to make over and above eight per cent. *As the burden was upon the common stockholders, the power to manage might fairly be left with them. In any view, it is fair to treat the proviso as but an arrangement between two classes of stockholders which did not concern the public.* It is true that one characteristic of stock generally is that it can be voted upon. But this is not essential. Indeed, instances may arise where it is good policy to prohibit the voting upon the stock. [Ryan v. Railroad, 10 A. L. Rec. 263; Ex parte

Holmes, 5 Cowen 426; Railway Frog Co. v. Haven, 101 Mass. 398; State ex rel. v. Hunton, 28 Vt. 594.]''

In that case there was no express statutory authority to withhold the voting power (see the act in full, 47 Ohio St. 145 and 146). In the case at bar, as in that case, the common stock gets no part of the net earnings until the preferential dividend, cumulatively, is paid to the preferred stock. ''As the burden was upon the common stockholders, the power to manage might be left fairly to them. *In any view, it is fair to treat the proviso as but an arrangement between two classes of stockholders which did not concern the public.*'' In Ohio, there existed the same cumulative voting law as is found in Missouri. [Sec. 3245, R. S. Ohio, as amended April 23, 1898—61 Ohio St. 497.]

By an act of the General Assembly of this State, approved April 9, 1901 (Laws 1901, p. 91), section 1312, Revised Statutes 1899, was amended so as to provide: ''Section 1312. Any three or more persons who shall have associated themselves, by articles of agreement, in writing, as provided by law, for any of the purposes included under section 1319, may be incorporated under any name or title designating such business. The articles of agreement shall set out: First, the corporate name of the proposed corporation, which shall not be the name of any corporation heretofore incorporated in this State for similar purposes, or an imitation of such name; second, the name of the city or town and county in which the corporation is to be located; third, the amount of the capital stock of the corporation, the number of shares into which it is to be divided, and the par value thereof, that the same has been bona fide subscribed, and one-half thereof actually paid up in lawful money of the United States, and is in the custody of the persons named as the first board of directors or managers; fourth, the names and places of residence of the several shareholders, and the number of shares sub-

scribed by each; fifth, the number of the board of directors or managers, and the names of those agreed upon for the first year; sixth, the number of years the corporation is to continue, which in no case shall exceed fifty years; seventh, the purposes for which the corporation or company is formed: Provided, that if upon organizing a corporation under this article it is desired that any portion of the stock shall be preferred, the articles shall further set out the amount of such preferred stock, the number of shares thereof, the names of the subscribers therefor, the number of shares of such stock subscribed by each subscriber therefor, and the preferences, priorities, classifications and character thereof as provided in section 1332 of the Revised Statutes of Missouri 1899, as amended by section 2 of this act.''

Section 1332, Revised Statutes 1899, was amended so as to provide: ''Section 1332. Whenever any corporation shall desire to call a meeting of its stockholders for the purpose of increasing the amount of its capital stock, and the directors thereof shall deem it advisable for the best interest of said company to submit, at the time and place of said meeting, to the stockholders, whether any part of said stock so proposed to be increased shall be preferred, and the amount, number of shares, the price per share, in case an increase shall be determined, and also the priorities, preferences and character thereof, and the different classes of preferred stock, if any, and in case additional notice to such effect shall have been given for the time as required by this article, for the purpose of increasing said capital stock, then, if on canvassing the votes of the said stockholders, as required by this article, it shall appear that all the stock of said company shall have been cast for the increase of the stock, and that all the stockholders have voted that any part of the said increased stock shall be preferred, the said stockholders shall also, at said time and place, by like vote, determine the character, amount,

the number of shares, and the price per share of said increase, and what rate of dividend, not exceeding eight per cent per annum, shall be paid on said preferred stock out of the net earnings, and whether such dividends shall be cumulative or not, and what priority, if any, any class of such preferred stock shall have over the common stock or other preferred stock out of the assets of the corporation in case of its dissolution or liquidation.''

Amended section 1333 reads as follows: ''Sec. 3. That section 1333, Revised Statutes 1899, be and the same is hereby amended by striking out in line five thereof, the word 'increase' and by inserting in line five thereof, between the words 'stock' and 'and,' the following: 'And the preferences, priorities, classification and character thereof;' so that said section, as amended, shall read as follows:

''Section 1333: The statement required by section 1329 of this article, in case said capital stock shall be increased in the manner provided in the foregoing section, shall also set forth the amount and the number of shares, the price per share of such preferred stock and the preferences, priorities, classification and character thereof, and also the rate of dividend to be paid thereon.''

By the express provisions of these sections as thus amended, power is conferred upon the stockholders in forming a corporation in the first instance, or afterwards upon a call for that purpose, to issue preferred stock, prescribe the number of shares of such stock and fix the preferences, priorities, classification and character thereof. With this ample power conferred upon them, why may not the stockholders in determining for themselves fix the character of preferred stock as nonvoting? By so doing they are not violating any rule of the common law and if the preferred stockholders voluntarily agree to such a limitation on their stock such

an agreement between the parties *sui juris* cannot be said to violate any rule of public policy. But, as said by the Supreme Court of Ohio in Miller v. Ratterman, 47 Ohio St. 1. c. 158 (1890): "Nor is it unreasonable. The promise to the preferred stockholders was to award them first the net earnings, the holders of the common stock to share in such of the net earnings as they might, by good management, be able to make over and above eight per cent." As the burden is upon the common stockholders the power to manage may fairly be left with them, and their interest in the success of the corporation and their liability to first satisfy the preferred stockholders is a sufficient guaranty that they will manage the affairs of the corporation to the best advantage. But, in any event, it is a matter of mutual convention between the two classes of stockholders voluntarily entered into, and as no rule of common law or public policy is contravened thereby, we can perceive no objection to the arrangement unless it violates some express provision of our organic or statutory law.

The Attorney-General lays much stress upon section 6 of article 12 of the Constitution which ordains that "each shareholder shall have the right to cast as many votes as shall equal the number of his shares." The object and purposes of this provision in our Constitution is well understood and has been judicially expounded on several occasions. Its purpose was to introduce the principle of cumulative system of voting in elections of stockholders so as to secure to the minority of stockholders a voice in the management of the affairs of the company in proportion to the number of their shares, in lieu of the common law right to vote one vote irrespective of the number of shares held by him. [Gregg v. Granby Co., 164 Mo. 625; State ex rel. v. McGann, 64 Mo. App. 225.]

If this section is to be construed literally, the Secretary's contention has much force in it. A construc-

tion has nowhere been given to section 6 of article 12, within our knowledge or research, so as to constitute it a prohibition or restriction on the right of stockholders to make their contracts which violate no rule of the common law and which affect no rights except their own. The reason of a law is its life. In construing it, courts look to the purpose in view, and when we consider the object of the people in incorporating section 6 of article 12 into our organic law, in our opinion they had no intention of changing the long-established right of stockholders to make certain stock a preferred lien on the dividends of the business, and to agree that the holders of such stock should have no right to vote in the management of the business, but should content themselves with the preferences and priorities given them of first receiving the profits of the business.

Properly understood, we think section 6 of article 12 of the Constitution means only that every stockholder entitled to vote at any corporate election is entitled to vote his share on the cumulative plan, but does not mean that the stockholders themselves in the organization of the company may not voluntarily agree that certain preferred stock shall be issued and that the holders thereof shall not have the right to vote. [Wright v. Central California Water Company, 67 Cal. 1. c. 535.] When we recall the historic setting of this provision in our organic law and the obvious purpose of its insertion therein, we can discover no intention to take away a long-established right of stockholders at common law, to make their own agreements as long as they did not collide with some settled principle of law, organic or statutory, and which did not contravene public policy, but concerned themselves only. [Miller v. Ratterman, 47 Ohio St. 157; In re Newark Library Assn., 64 N. J. L. 1. c. 219.]

This view is reinforced by the construction placed

by courts in the United States upon the nature of preferred stock.

Thus, in Ryan v. Railroad, 10 A. L. Rec. l. c. 267 (Hamilton County Court of Com. Pleas), the learned judge remarks: "The objection finally is that the right of voting was suspended, or, at least, only given under condition, and that it is essential to the *character of stock that it should be voted upon.* But it is not essential to the character of stock that it should be voted upon. There may be cases arising where the policy of the law itself, in the absence of legislation, would prohibit voting upon stock, although the stock itself would be left in its character as stock."

Redfield on Railways (6 Ed.), vol. 2, sec. 237, treating of this subject, says: "The company, where the capital is not limited in the charter, may from time to time issue new shares, and probably give them a preference, as a mode of borrowing money, where they have the power to borrow on bond and mortgage, as *preferred stock* is only a form of *mortgage.*" [Ex parte Holmes, 5 Cow. 426; Railway-Frog v. Haven, 101 Mass. 398; State ex rel. v. Hunton, 28 Vt. 594.]

In view of these principles we think that the General Assembly of Missouri, in the enactment of the amended sections 1312 and 1332 (Laws 1901, pp. 91 and 92), did not act beyond the pale of its constitutional authority in permitting the stockholders themselves in their articles to issue preferred stock and fix "its preferences, priorities, classification and the character thereof," and that the petitioners in this case had the power in defining *character* of the preferred *stock* to be issued by the corporation to provide that it shall be non-voting. The "character thereof" is broad enough to authorize the "not-unusual" provision characteristic of

preferred stock as used by the law-writers and courts at common law, as to its voting or non-voting power.

We hold then that the evident purpose of section 6 of article 12 of our Constitution was to guarantee to stockholders *having the right to vote*, of cumulating their votes, and has no reference to the contractual right of the stockholders, *inter sese*, of providing that preferred stockholders shall or shall not have the right to vote such stock, and to hold that it has taken away this well-recognized common law right would be to distort its obvious purpose.

We have carefully considered the able argument of the Attorney-General, but we find ourselves unable to concur in his conclusions, and accordingly we are satisfied that we correctly directed the peremptory writ of mandamus to issue, for the reasons herein assigned, and this opinion will be filed now as of the date the writ was ordered issued.

*Brace, C. J., Marshall, Valliant, Fox* and *Lamm, JJ.,* concur; *Burgess, J.,* absent at hearing.