LEO SENSABAUGH, Plaintiff and Respondent, v. POLSON PLYWOOD COMPANY, a Corporation, WILL TIDDY, H. H. MEES, GEORGE KERN, JOHN BIRD and ED FUNKE, Directors Thereof, Defendants and Appellants.

No. 10004.

Submitted June 10, 1959. Decided July 30, 1959.
Rehearing Denied September 1, 1959.
342 Pac. (2d) 1064.

MR. JUSTICES ANGSTMAN and BOTTOMLY, dissented in part.

Rankin & Acher, Helena, Doyle & Heinz, Polson, for appellants. Arthur P. Acher, Helena, and Stanley M. Doyle, Polson, argued orally.

Hamman & Gottwig, Polson, Smith, Boone & Rimel, Missoula, for respondent. F. N. Hamman and Donald E. Gottwig, Polson, argued orally.

MR. CHIEF JUSTICE HARRISON:

This is an action brought by a stockholder of defendant corpo-

ration to have an election of defendant's directors declared null and void and a new election ordered to be held.

The facts appear to be that from the date of incorporation of the defendant, Polson Plywood Company, hereinafter referred to as the Company, until April 21, 1956, plaintiff was a member of its board of directors and president. At a directors' meeting on March 7, 1956, a motion was adopted to appoint a committee to formulate amended by-laws for the Company. Such a committee was appointed by plaintiff and it drafted amended by-laws, including an amendment of Article III, Section 6 of the by-laws to change it to read as follows:

"Section 6. Every stockholder shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected."

After due notice, the annual meeting of the Company was held on April 21, 1956, at which meeting the amended by-laws were presented, including the proposed amendment of Article III, Section 6, above quoted. The amended by-laws were adopted by unanimous vote of the stockholders present in person or by proxy, including the plaintiff. Plaintiff, along with the other directors of the Company, executed a "Certificate of Adoption" of the amended by-laws.

At the annual stockholders' meeting in 1957, a resolution was duly adopted by the stockholders approving the minutes of the April 21, 1956, meeting, and the action of the stockholders in approving the amended by-laws adopted on April 21, 1956, was thereby ratified.

At the annual meeting of the stockholders of the Company held on April 19, 1958, after seven candidates had been nominated for directors but before balloting, the president of the meeting ruled that the stockholders would not be allowed to vote cumulatively, over the protests of the plaintiff. Certain ballots were nevertheless purportedly voted cumulatively, but were counted as straight ballots. Other stockholders wanted

to vote cumulatively but did not do so by reason of the ruling of the president. On April 22, 1958, this action was filed.

The case was tried before the court without a jury and the district court found as a matter of law that the right to vote cumulatively is a right guaranteed by the Constitution of Montana, Art. XV, section 4, and section 15-405, R.C.M. 1947, and that such right cannot be abridged by a corporate by-law or resolution of the stockholders or by a ruling of the president; that even if the by-laws were treated as a contract between the stockholders and between corporation and stockholders that it was against public policy and void; that the election of directors was void and a new election was ordered to be held at which stockholders could cumulate their votes. Judgment was entered ordering a new election and defendants forthwith appealed.

There are but two issues in this appeal. First, may a corporation by a by-law deny the right of cumulative voting? Second, is a stockholder's contract to refrain from cumulative voting against public policy and void?

As to the first proposition, section 4, Article XV, Montana Constitution provides:

"The legislative assembly shall provide by law that in all elections for directors or trustees of incorporated companies, every stockholder shall have the right to vote in person or by proxy the number of shares of stock owned by him for as many persons as there are directors or trustees to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them, on the same principle, among as many candidates as he shall think fit, and such directors or trustees shall not be elected in any other manner."

R.C.M. 1947, section 15-405, provides:

"All elections must be by ballot, and every stockholder shall have the right to vote in person or by proxy the number of shares standing in his name, as provided in section 15-504 of this code, for as many persons as there are directors to be elected, or to cumulate said shares and give one candidate as

many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them on the same principle among as many candidates as he shall think fit. In corporations having no capital stock, each member of the corporation may cast as many votes for one director as there are directors to be elected, or may distribute the same among any or all of the candidates. In either case the directors receiving the highest number of votes shall be declared elected."

Nebraska has a constitutional provision similar to ours and the interpretation thereof was recently before their Supreme Court in the case of E. K. Buck Retail Stores v. Harkert, 157 Neb. 867, 62 N.W. (2d) 288, 294, 45 A.L.R. (2d) 774. That court stated:

"In considering the meaning of Article XII, section 5, of the Constitution, and section 21-135, R.S. 1943, it is proper to consider the evil and mischief attempted to be remedied, the objects sought to be accomplished, the scope of the remedy its terms apply, and give it such an interpretation as appears best calculated to effectuate the design of the constitutional and legislative provisions. It is clear to us that the purpose of the constitutional provision and statute enacted pursuant thereto was to provide for cumulative voting in the election of directors or managers of incorporated companies in order to secure to minority stockholders a greater representation in the management of the corporation's business. In order to do this it was necessary that the law state the number of votes to which each stockholder was entitled and to insure against an involuntary loss of the right conferred. In the accomplishment of the latter, the Constitution provides that 'such directors or managers shall not be elected in any other manner.' The latter prohibition, as we view it, operates to prevent a corporation by its articles of incorporation, by-laws, or any act of its directors or stockholders from depriving a stockholder of the right to vote his stock in the manner specified in the Constitution and statute. * * *

"The result necessarily hinges upon the meaning to be given

to the words 'and such directors or managers shall not be elected in any other manner.' It will be noted that Article XII, section 5, of the Constitution provides that every stockholder shall have the right to vote in person or proxy for directors or managers on a stock ownership basis for as many as there are directors to be elected, and he may cumulate his vote and distribute it among the candidates as he sees fit. Then follows the provision that directors shall be elected in no other manner.

"We think the meaning of the constitutional provision is clear. Its purpose is to provide for cumulative voting in the accomplishment of which it was necessary to fix the voting power of the shares of stock. In many states cumulative voting is permissive,—it could be properly included in the articles of incorporation, or not, as the incorporators might determine. The clause 'and such directors or managers shall not be elected in any other manner' was placed in Article XII, section 5, of the Constitution, to make it mandatory that every corporation within the purview of the constitutional provision should permit cumulative voting."

We agree with the reasoning of that court and hold that a corporation may not deprive a stockholder of the right of cumulative voting by any act on its part.

Turning to the second proposition, with regard to a stockholder's right to contract. This issue was before the Supreme Court of Nebraska in the E. K. Buck Retail Stores v. Harkert case, supra, and in such opinion the cases cited to us by appellants and respondent are considered and discussed. It would unnecessarily extend this opinion to quote that entire discussion herein, but that court said:

"But such provision [Constitutional provision providing for cumulative voting] does not purport to limit the right of the stockholder to contract with reference to his stock. It grants him a right or privilege which he may or may not exercise as he sees fit, but it is one of which the corporation or any agency thereof cannot deprive him. Neither the constitutional provi-

sion nor the statute purports to limit the right of the stockholders to contract with other stockholders with respect to such right."

Quoting from State ex rel. Frank v. Swanger, 190 Mo. 561, 89 S.W. 872, 876, 2 L.R.A., N.S., 121, the Nebraska Court said:

" 'A construction has nowhere been given to section 6, art. 12 [similar to sec. 4, art. XV, Mont. Const.], within our knowledge or research, so as to constitute it a prohibition or restriction on the right of stockholders to make their contracts which violate no rule of the common law, and which affect no rights, except their own'."

We agree with their conclusion. This answers the question as to whether the constitutional provision, in expressing public policy, forbids stockholders to contract among themselves with respect to voting their stock.

Here appellant contends that the by-law which does not provide for cumulative voting, which we have heretofore declared invalid as a by-law, is enforceable as such a contract and that plaintiff is bound thereby. However, it must at all times be borne in mind the difference between stockholders' contracts between themselves without the realm of the corporate structure and those carried on or attempted within. Here we have the majority of the stockholders, including plaintiff herein, in 1956 desiring to bind themselves from cumulative voting. If their purpose at that time was, as appears from the record, for the good of the corporation and themselves as stockholders, they could have easily entered into a valid contract between themselves to that end. As was expressed in the E. K. Buck Retail Stores v. Harkert case, supra, the Constitutional provision involved here was not designed as a restriction on the rights of stockholders to make their contracts which violate no rule of the common law, and which affect no rights, except their own. Here the stockholders did not do so without the realm of the corporate structure but carried it within, by amending the by-law. By such a method the majority attempted

to bind all stockholders, including those not represented at the meeting when the by-law was amended.

It must further be remembered in this connection that the matter of initiating the move to dispense with cumulative voting did not arise among stockholders as such in the first instance. It made its appearance at a meeting of the board of directors on March 7, 1956, when a motion was presented to appoint a committee to prepare amended by-laws, and the committee for that purpose was appointed by the president of the corporation, and it drafted the by-law in question here. In other words the entire matter was handled within the corporate structure from its inception to its conclusion. To enforce this by-law, invalid as a by-law, as a contract, will amount to a deprivation of the right secured by section 4, Article XV, Mont. Const., the right of a minority of stockholders to secure a greater representation in the management of the corporate business through the exercise of cumulative voting.

From what we have said herein there existed no binding contract at the time of the annual meeting on April 19, 1958, and the plaintiff's protest should have been sustained.

For these reasons the judgment of the district court is affirmed.

MR. JUSTICE CASTLES, concurs.

MR. JUSTICE ADAIR:

I concur in the result but not in all that is said in the foregoing majority opinion.

MR. JUSTICE ANGSTMAN: (concurring in part and dissenting in part).

I concur in what is said in the foregoing opinion so far as it holds that a corporation may not, by its act, deprive a stockholder of the right of cumulative voting and so far as it holds that a stockholder may make a contract whereby he surrenders the right to cumulative voting.

I disagree with that part of the majority opinion which holds

that such an agreement may not be expressed in the form of a by-law to which the stockholder assented. I know of no rule of law which prescribes any particular form that such a contract must take.

I concede that the by-law, in question here, is not binding on a dissenting stockholder, but I think it binds those who assented to it since it has the effect of an agreement surrendering the right of cumulative voting.

MR. JUSTICE BOTTOMLY: (concurring in part and dissenting in part).

The plaintiff is a stockholder of defendant, which is a domestic corporation, being incorporated under the laws of Montana.

I agree with the majority opinion insofar as it affirms the judgment entered by the district court. I also agree that such a corporation may not by a by-law deny the right of cumulative voting by any stockholder. This right is established by section 4 of Article XV of the Montana Constitution, made mandatory and prohibitory by section 29, Article III thereof, and made operative by R.C.M. 1947, Chapter 4 of Title 15. These laws provide and establish the public policy of Montana until altered or changed by the sovereign people of this state. It is my opinion that any contract between stockholders for the election of directors or trustees of such a corporation other than prescribed by the Constitution is void and courts have no power or authority than has an individual or a combination of stockholders to ignore, set aside or disrupt this established public policy of the state.

Any contract between stockholders of a domestic corporation, in regard to the election of a trustee or director or directors of such corporation contrary to the mandatory and prohibitory provisions of the Montana Constitution would be void as being ultra vires and are contrary to the constitutionally established public policy. In my estimation, the written opinion of District Judge William F. Shallenberger, dated August

25, 1958, and filed August 26, 1958, and set forth on pages 28 to and including page 32 of the transcript in this appeal, correctly states the applicable law in this case on both points, with which I fully agree.

We should remember that our State Constitution has many exacting provisions not found in any other State Constitution, and if they are to be changed, the same should be referred to the people for their consideration; courts have no power or authority to change such plain provisions. Our Legislature has declared that "Law is a solemn expression of the will of the supreme power of the state." R.C.M. 1947, section 12-101.

"The will of the supreme power is expressed:

"1. By the constitution;

"2. By statutes." R.C.M. 1947, section 12-102.

The supreme power and sovereignty of the state resides in the people of the State of Montana. R.C.M. 1947, section 83-101.

It is my opinion that the Supreme Court of Colorado, in People ex rel. Arkansas Valley Sugar Beet & Irrigated Land Co. v. Burke, 72 Colo. 486, 212 Pac. 837, 841, 30 A.L.R. 1085, reached the right conclusion in regard to contracts entered into between stockholders of domestic corporations, to control the election of directors thereof, in holding that such contracts were absolutely void as against the public policy applicable thereto which had been established by the Colorado Legislature.

The Colorado court said in the above decision that "The language [of the law] is plain and unambiguous. It is not susceptible of construction. It interprets itself. It is *an absolute, unequivocal command that the directors shall not be elected in any other way than the way or ways* which the section itself specifically provides. * * * If a contract * * * may accomplish this result, upon the same principle it may take away from every stockholder his right to nominate or elect any of the * * * directors * * * Upon the plainest principle of justice and law, *a contract having such effect is so manifestly unfair* to the majority of the stockholders, and,

*being so plainly contrary to the letter and spirit of a positive and affirmative statute, and the public policy thereby declared, that a court, which sits to administer justice, ought not to sanction or uphold it, but should unhesitatingly declare it void per se.''* Emphasis supplied.

The above-quoted parts of the opinion of the Supreme Court of Colorado were quoted by the district court in his well reasoned and written opinion, hereinabove referred to.

I am somewhat appalled by the majority opinion which, for its principal authority, adopts the reasoning of the Nebraska Court in the case of E. K. Buck Retail Stores v. Harkert, 157 Neb. 867, 62 N.W. (2d) 288, 295, 45 A.L.R. (2d) 774, in which opinion, the Nebraska court in commenting on the contention therein made, that the contract there being litigated, was valid as it had been entered into by stockholders outside the corporate structure stated: ''It is asserted, however, that an agreement between stockholders as to how stock shall be voted at the election of directors ipso facto changes the manner of election prescribed by the Constitution. To so hold would have the effect of invalidating existing statutes relating to *voting trusts and all other forms of voting combines by a majority of the stock to control the management of the corporation, which were recognized at common law. The Constitution so construed would be superior to any statute in conflict therewith. We do not think the framers of the Constitution had any such intention* \* \* \*'' Emphasis supplied.

I do not think much comment is necessary on the foregoing, as R.C.M. 1947, section 12-104, provides that in this state *''there is no common law in any case where the law is declared by the code or the statute.''* Emphasis supplied.

This court also has held repeatedly, and which needs no citation, that the Federal Constitution and the Constitution of Montana are the supreme law of the state and any statute impinging on the mandatory and prohibitory terms of our Constitution are invalid, unenforceable and void.

The foregoing is my conception of our established law on the

subject of election, of directors or trustees of domestic corporations.