State, ex rel. School District of City of Sidney, relator, v. George W. Marsh, Auditor, respondent.

Filed March 28, 1922. No. 22525.

1. Schools and School Districts: Refunding Bonds. A school district in a city of over 1,500 population can issue bonds for the purpose of funding its outstanding valid warrants, under chapter 143, Laws 1919.

2. Statutes: Construction: Constitutionality. It is not the province of the court to alter by construction an act of the legislature which is free from ambiguity and clear and explicit in its terms, upon the theory that the legislature made a mistake and did not intend to do that which its language clearly imports.

Original proceeding in mandamus to compel respondent, as auditor of public accounts, to register bonds of relator school district. *Writ allowed.*

*Holmes, Chambers & Mann,* for relator.

*Clarence A. Davis, Attorney General,* and *Mason Wheeler, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and FLANSBURG, JJ., DICKSON and STAUFFER, District Judges.

STAUFFER, District Judge.

The original jurisdiction of this court is invoked by the relator, a school district in a city of over 1,500 population, for a peremptory writ of mandamus directing the auditor of public accounts, respondent, to register bonds of the school district in the sum of $60,000. The bonds carried at a special election called by relator's board of education. The bonds were voted for the purpose of funding outstanding registered warrants of the district. The warrants had been given for the "expenses incident to the purchase of the site, enlargement and construction of a new grade school building, and repairs and maintenance of other school properties and school systems in general." A portion of the warrants represent money expended for repairs on old school buildings, and for payment of general school expenses. The bond history does not indicate what portion of the issue was for any certain part of the items above specified. Respondent refused to register the bonds, the sole objection being that they were issued for an unlawful purpose.

The question for determination is: Does chapter 143, Laws 1919, authorize a school district in a city of over 1,500 population to issue bonds for the purpose of funding its outstanding valid warrants? The statute reads in part as follows. "The aggregate school tax, exclusive of school bond and special warrant taxes, shall in no year exceed such a sum or rate as shall be necessary to raise the sum provided for by the estimate returned in accordance with

section 6970 of the Revised Statutes of Nebraska for the year 1913, provided such levy shall in no event exceed 100 mills.   But the board of education may borrow money upon bonds or warrants which they are hereby authorized and empowered to issue."

Relator contends this statute authorizes it to issue bonds for any school purpose which the electors of the district approve.   The question as to the validity of the issue is one of first instance in this state.   The school district had outstanding warrants in the amount of $60,000, bearing 7 per cent. interest, and selling at a discount.   On October 3, 1921, the board of education decided to issue these bonds drawing 6 per cent. interest annually to take up the warrants.   It is not controverted that relator could have proceeded under the above statute for the purpose of voting bonds to be used only in purchasing school sites, and the erection and furnishing of school buildings.   But relator went further than this.   It was confronted with the problem of not only raising funds for permanent improvements, but also to provide for the payment of outstanding warrants previously issued for general school purposes.   Its fiscal policy was determined by its board.   The board of education is the administrative body of the district.   They are elected by the legal voters of the district to administer its affairs.   They decided to submit to the voters the proposition of issuing bonds to erect and furnish school buildings, as well as to fund its outstanding debt.   This proposition was placed before the legal voters of the district at a special election called specifically for that purpose.   The voters approved the policy of the board.   A majority of the votes were cast in favor of the bond issue.   The bonds have been printed, have been duly advertised for sale, and have been sold to the highest bidder.   The school district now stands in the position of having deliberately chosen to impress the taxable property of the district with the obligation of these bonds, but unable to market them for the reason that the auditor of public accounts refuses to register the issue.   The part played by the board in this

particular instance was that of initiating the proceedings which culminated in the carrying of the bonds. The statute safeguards the interests of the district throughout. The phraseology of the second paragraph indicates that the legislature had in mind to provide means for a school district to raise revenue in addition to the maximum amount provided in the first paragraph, to be raised by a levy. The individual legal voter of the district is the one who determines the false or true political economy of the proposition.

An examination of the statute indicates that the legislature intended limiting the amount that the school district could impress as a tax upon property within the district in any one year, by providing that "such levy shall in no event exceed 100 mills." The legislature undoubtedly had in mind that occasions might arise when this limitation, standing by itself, unmodified, would work a hardship upon the school district in restricting the amount it might raise in revenue under such limitation. The second paragraph provides a method whereby "a board of education may borrow money upon bonds or warrants which they are hereby authorized and empowered to issue." This paragraph is ushered in by the significant adversative conjunction "but." This word has been judicially defined as "except," "except that," "on the contrary," "or," "and also," "yet," and "still." See Words and Phrases. It would therefore seem that the legislature, having limited the aggregate school taxes which might be raised by levy, provided an additional method of raising money by the district, to wit, by a bond issue voted by the people. The two paragraphs of the section must be construed together and some significance must be attached to the word "but." There can be no doubt that the legislature intended to provide a law to enable school districts containing cities of over 1,500 population to borrow money according to their needs. Each individual district is the arbiter of its own needs. The statute is an authorization to issue bonds for any proper school purpose. Its terms are unambiguous.

Where the law is expressed in words which are clear and not ambiguous, no doubt as to its meaning or purpose can arise from the language employed; where to understand and know its intent it is but necessary to read, then there is no call for interpretation. *State v. Bratton,* 90 Neb. 382; *State v. Moore,* 45 Neb. 12.

It is not the province of the court to alter by construction an act of the legislature which is free from ambiguity and clear and explicit in its terms, upon the theory that the legislature made a mistake and did not intend to do that which its language clearly imports. *State v. Bratton, supra.* This case gives the history of the statute of which chapter 143, Laws 1919, is an amendment. This case also holds that the section was constitutionally enacted. The limit of taxation for general school purposes was reduced by the legislature in the original act from 2 per cent. to 15 mills. In lieu thereof the legislature provided that school districts of the class to which relator belongs could raise funds by borrowing money and issuing bonds, provided the people consented by a majority vote.

It should also be observed that, where the legislature intended to limit certain classes of school districts in borrowing money for the express purpose of erecting and furnishing school buildings, it has so provided by using unmistakable language. This is readily determined from a reading of the statutes relating to the establishment, maintenance and government of rural high schools and county high schools. See chapter 118, Laws 1915, and chapter 126, Laws 1917. These statutes expressly limit bond issues to permanent improvements. We are therefore drawn to the conclusion that, had the legislature intended chapter 143, Laws 1919, to limit school districts to issue bonds for permanent improvements only, it would have so indicated by unambiguous and unmistakable language.

The bonds in question were issued after a full compliance with all the provisions of the law. They are entitled to reg-

istration. A peremptory writ of mandamus should issue, directing the state auditor to register these bonds.

WRIT ALLOWED.