LINCOLN GAS & ELECTRIC LIGHT COMPANY ET AL., APPELLEES, v. WINNIE WATKINS, APPELLANT. *

FILED JUNE 12, 1925. No. 24628.

1. Statutes: CONSTRUCTION. In the interpretation of a legislative act, it will be presumed that the lawmakers intended that in the enactment of a statute every word used therein shall be given its ordinary and usually accepted meaning.

2. Master and Servant: SEASONAL OCCUPATIONS. As applied to occupations, the word "seasonal," as used in section 3049, Comp. St. 1922, refers to occupations which are governed by and are ordinarily performed only in certain seasons of the year.

3. ———: COMPENSATION. The employers' liability law provides that compensation shall be based on the wages received by the

---

* Note—Argument was had in the above suit April 20, 1925. This is the first suit argued and submitted in the new capitol building.

injured or deceased employee, as the case may be, "at the time of the acccident causing the injury." Comp. St. 1922, sec. 3045.

4. ———: ———. Where the evidence discloses that a claimant, under section 3045, Comp. St. 1922, is wholly dependent for her support upon her son, "at the time of the accident" which caused his death, such claimant is entitled, under section 3045, Comp. St. 1922, to 66⅔ *per centum* of the wages received by the employee at the time of the injury, for a period of 350 weeks, but the compensation shall not be more than $15 a week.

5. ———: ———: Costs of Accident. The employers' liability law accepts as an inevitable condition of industry the happening of accident and charges its costs to the industry.

6. ———: ———: Penalty. Where reasonable grounds for controversy do not exist in respect of the time when and the manner in which a deceased employee met his death, the defendant's liability under the employers' liability law accrues, in the manner and at the time provided in section 3048, Comp. St. 1922, and if the statutory payments are thereafter withheld by the employer he is subject to the penalty for waiting time which is provided in the above-cited section.

7. ———: ———: Attorney's Fees. Under the evidence and the law, counsel for claimant are entitled to an additional attorney fee of $100, for services in this court, pursuant to section 3048, Comp. St. 1922.

Appeal from the district court for Lancaster county: Mason Wheeler, Judge. *Reversed, with directions.*

*Holmes & Chambers,* for appellant.

*Reavis & Beghtol* and *C. E. Sanden, contra.*

Heard before Rose, Dean, Day, Good, Thompson and Evans, JJ., and Shepherd, District Judge.

Dean, J.

Kenneth Watkins, aged 20, while in the employ of the Lincoln Gas & Electric Light Company, came in contact with an electric current, August 1, 1924, while he was working on an electric light pole, and thereby met an immediate death. The United States Fidelity & Guaranty Company is the insurer of the above named company's risk, and both have been joined as defendants and they will be hereinafter designated as such. Mrs. Winnie Watkins is

Kenneth's mother. She filed a petition with the compensation commissioner wherein she prayed for compensation and, upon a hearing being had, the commissioner found that she came within the partial dependency class, under section 3045, Comp. St. 1922, and fixed her award at $8 a week for 350 weeks and awarded $150 for funeral expenses. Both parties appealed to the district court and the award of the commissioner was there affirmed and, in addition to the commissioner's finding, the district court allowed $100 as an attorney fee, and judgment was accordingly rendered in favor of claimant. Neither party was satisfied with the judgment and both have appealed.

Mrs. Watkins contends that she comes within the class designated in section 3045, Comp. St. 1922, as "wholly dependent," and that she is therefore entitled, under the act, to $15 a week, as compensation, for a period of 350 weeks, and funeral expenses, and an attorney fee and the statutory penalty for waiting time under section 3048, Comp. St. 1922.

Defendants concede that Mrs. Watkins' son was killed by reason of an accident, arising out of and in the scope of his employment, and that his mother is entitled "to an award of some amount, the sole issue being the amount * * * per week" to which she is entitled. The contention is that she is but partially dependent and that, at the most, she is entitled to $2.88 a week, and no more, for the statutory 350-week period. Defendants admit, however, that Mrs. Watkins is entitled to $150 for funeral expenses. But they contend that an attorney fee should not have been allowed and they protest that, under the facts, plaintiff is not entitled to the statutory "waiting time."

The material facts are substantially these: It seems that Mrs. Watkins and her son Kenneth came to Lincoln from Auburn, their former home, in September, 1923, and that her family consisted of Kenneth and herself. Lowell Watkins, her husband, is a carpenter and the last she knew of his whereabouts he was at Dubuque, Iowa. They had not lived together for more than ten years immediately pre-

ceding the trial.  There is another son named Gordon, aged 24 and now married, and, from Mrs. Watkins' evidence, it appears that he had not lived with her and Kenneth since they came to Lincoln.  Sometime before the trial Mrs. Watkins obtained a divorce.  She testified that, during all the years of their separation, she received no support from her husband, and that he, without cause, during upwards of the past ten years of their married life, refused to live with her or to support her; that he never wrote to her; that at times he sent comparatively small sums of money to Kenneth, and that "it was understood that he was to contribute something until the boys were through school and then he was through;" that for about a year he gave Kenneth about $25 a month, but at no time did he contribute anything for her support; that Kenneth was an active young man, "unusually strong and healthy," and so continued "clear up to the day of his death."

She testified that Kenneth was her sole support, and that before he died he furnished her with room and board and such clothing as she "had to have," and occasionally a little currency; that it was always understood by the family that Kenneth would support her; that, when asked what was said by Kenneth on the subject of her support, she answered:  "Well, he had always said that he was going to take care of Mamma, that wherever he was she was to be; I can't tell you how many times he said it, and if anything was said about what I was to do that was all that could be said because he always insisted on that;" that the eldest son was not physically strong, and was "never so that he could get any life insurance" and never contributed anything to her support; that she did some plain sewing and ironing and ordinary housework, but this was more than a year before Kenneth's death; that she never attended to the payment of bills, but this was always left to Kenneth; that they lived at Auburn four years before they moved to Lincoln, and that, during this four-year period, she and Kenneth both worked; that for about fifteen months, namely, from the spring of 1922 until the fall of

1923, which was just before they moved to Lincoln, Kenneth, for about three months of this period, was employed by an electrical company building lines out of Nebraska City, and for the remainder of the time he worked for an electrical concern at Auburn, but she did not name the wages which he then earned, but she said that during this time she did little work and that her support "came from Kenneth;" that Kenneth borrowed between $300 and $400 while he was attending school; that at the time of the accident and up to the time of his death, while in defendant's employ, he was earning $36 a week; that since the death of her son she has been going about from place to place, and has lived with relatives and friends in town and in the country, and that for board, lodging and incidental accommodations no charge has been made by any person.

The owner of the house where Kenneth and his mother occupied rooms for about six months before the accident testified that the monthly rental of $25 was always paid by Kenneth's check. This witness and Mrs. Watkins were the sole witnesses to testify in her behalf. Defendants produced no witnesses.

As noted herein, Kenneth Watkins was a student at the state university in 1924, and when the summer vacation period came his employment with the defendant company began, and at the time of his death it is conceded that he had then worked two months at a wage of $36 a week. While defendants contend that Kenneth intended to return to the university in the fall, there is no proof that he intended to do so. There is nothing in the record tending to prove that Kenneth had not found his field of usefulness in electrical pursuits, or that he was dissatisfied with an occupation in which he, a youth of 20, could earn almost $150 a month and be thereby enabled to support his mother in comfort.

Defendants argue that Kenneth's occupation was "seasonal" and that it is therefore governed by section 3049, Comp. St. 1922, which, among other provisions, contains this:

"In occupations involving seasonal employment or employments dependent upon the weather, the employee's weekly wages shall be taken to be one-fiftieth of the total wages which he has earned from all occupations during the year immediately preceding the accident."

Counsel argue:

"He worked as a laborer only during vacations, his principal occupation being attendance at the state university. Likewise his employment did not depend upon the weather, but on the contrary depended only upon the occurrence of the vacation season. However, his employment was 'seasonal.' Seasonal is defined in Winston's Dictionary, 1921 edition, as 'changing with the seasons.' * * * There can be no question that the occupation of the deceased pertained to, changed with and depended on the season of the year. During the fall, winter and spring his occupation was that of a student. During the summer his occupation was laborer."

The argument is ingenious, but it does not appeal to us. This is the Century Dictionary definition of "seasonal:"

"Of or pertaining to the seasons; relating to a season or seasons.

"The deviations which occur from the seasonal averages of climate. (Encyclopœdia Britannica, VI, 6.)

"The rainfall of the British Islands has been examined with reference to its *seasonal* distribution in relation to the physical configuration of the surface."

Following is another recognized definition: "Of or pertaining to a season or the seasons." Webster's Dictionary.

We do not think the legislature intended to place the construction upon the word "seasonal" for which defendants contend. It is elementary that the legislature uses words in their ordinary and usually accepted sense as applied to occupations, the word "seasonal," as used in the statute, seems to refer to occupations which are governed by and can be performed only in certain seasons. For example: The cutting of natural ice upon the frozen surface of a stream would, for obvious reasons, be confined to the win-

ter season and, in this sense, may be called a seasonal oc-
cupation.

Mrs. Watkins owns a small six-room house at Auburn
which is located on a 75-foot lot and, she testified, is worth
perhaps $2,000 and rents for $15 a month. In one year the
taxes were over $100 and $80 in another year. From her
evidence it appears that, when the repair bills, taxes and
insurance were paid, there was nothing left of the rentals,
and that she did not "have any (other) property, at the
time of Kenneth's death," and she could not live on less
than $50 a month. The Carlisle table shows that at her
age of 50 years the life expectancy is a little more than 21
years. It is clear that, above expenses, she derives no
revenue from the rentals. If the property should be sold
for $2,000, and she realized the usual rate of interest, it
would yield an income approximating $100 or $120 an-
nually. If, however, she used the principal and also the
interest on the unused portion of the principal sum for
her support, the fund, at an expenditure of $50 a month,
would maintain her for a little over four years.

We think the proved facts bring the case within that part
of section 3045, Comp. St. 1922, which provides:

"If death results from injuries and deceased employee
leaves one or more dependents wholly dependent upon his
earnings for support at the time of the accident causing
the injury, the compensation * * * shall be sixty-six and
two-thirds *per centum* of the wages received at the time of
the injury, but the compensation shall not be more than
fifteen dollars per week."

The employers' liability law, as it is called in the Com-
piled Statutes, 1922, makes repeated provision that com-
pensation shall be based on the wages received by the in-
jured or deceased employee, as the case may be, "at the
time of the accident causing the injury." This expression
is not without significance, because, in varying forms, the
thought is repeatedly emphasized in the statute. In section
3045, above cited, the expression occurs five separate times.
That Mrs. Watkins was wholly dependent for her sup-
port upon her son Kenneth "at the time of the accident

causing the injury" clearly appears from a fair and un-biased consideration of all the evidence.

An act having to do with this subject is discussed in *Powers v. Hotel Bond Co.*, 89 Conn. 143, wherein this terse observation is made: "The act, by eliminating the proof of negligence, by minimizing the delay in the award and by making it reasonably certain, seeks to avoid the great waste of the tort action and to promote better feeling between workmen and employer, and accepts, as an inevitable condition of industry, the happening of accident, and charges its costs to the industry." See, also, *Parson v. Murphy*, 101 Neb. 542, and cases there cited and discussed.

We conclude that, in view of the record, Mrs. Watkins is entitled to compensation at the rate of $15 a week for 350 weeks from the date of the accident causing the injury. A review of the record discloses that, in respect of the defendants' privileged duty under the law, reasonable grounds for controversy at no time existed. It therefore follows that the defendants are also liable for "waiting time" as provided in section 3048, Comp. St. 1922, which, so far as applicable to the facts, provides:

"Except as hereinafter provided, all amounts of compensation payable under the provisions of this article shall be payable periodically in accordance with the methods of payment of the wages of the employee at the time of the injury or death: Provided, fifty *per centum* shall be added for waiting time for all of delinquent payments after thirty days' notice has been given of disability."

It seems clear that counsel for Mrs. Watkins are entitled to an additional attorney fee of $100 for services in this court pursuant to section 3048, Comp. St. 1922.

The judgment of the district court is reversed, with directions that judgment be entered in conformity with this opinion.

REVERSED AND REMANDED, WITH DIRECTIONS.

The following opinion on motion for rehearing was filed September 21, 1925. *Paragraph of syllabus withdrawn.*

PER CURIAM.

Upon motion for rehearing and reexamination of the record, we conclude that the law announced in the sixth paragraph of the syllabus is not applicable to the proved facts. It therefore follows that the above-mentioned syllabus paragraph, and also the argument in the body of the opinion, on the subject of waiting time, are hereby withdrawn. In all other respects the opinion is adhered to.

PARAGRAPH OF SYLLABUS WITHDRAWN.