OMAHA FLOUR MILLS COMPANY, AND BURLINGTON MILL & ELEVATOR COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 86414, 87320.  Promulgated June 13, 1939.

*J. A. C. Kennedy, Esq., Yale C. Holland, Esq.*, and *Edward J. Svoboda, Esq.*, for the petitioners.
*R. P. Hertzog, Esq.*, for the respondent.

OPINION.

MELLOTT: The Commissioner determined deficiencies in petitioners' income tax in the following amounts:

| | |
|---|---|
| Fiscal year ended June 30, 1932 | $6,423.06 |
| Fiscal year ended June 30, 1933 | 8,882.11 |
| Fiscal year ended June 30, 1934 | 10,468.35 |

One of the two issues raised by the pleadings with respect to depreciation allowed has been waived by petitioners. The remaining issue is whether or not the respondent erred in denying petitioners and the National Baking Co. the right to file consolidated returns for the taxable years under the provisions of section 141 of the Revenue Act of 1932.

We find the facts to be as stipulated. They may be summarized as follows:

The Omaha Flour Mills Co. (hereinafter referred to as the Omaha Co.) is a corporation, incorporated in 1906 under the laws of the State of Nebraska. Its name was subsequently changed on July 11, 1936, to Omar Mills, Inc.

The Burlington Mill & Elevator Co. is a corporation incorporated under the laws of the State of Nebraska on or about February 1929. All of its outstanding capital stock was owned by the Omaha Co. during the fiscal years herein involved.

By amendment to the articles of incorporation of the Omaha Co. filed March 3, 1920, its total authorized stock consists of 7,500 shares of 7 percent cumulative preferred stock of the par value of $100 each, and 3,000 shares of common stock of the same par value. On July 1, 1931, the outstanding capital stock of the Omaha Flour Mills Co. was held as follows:

| Stockholder | Common stock | Preferred stock |
|---|---|---|
| | Shares | Shares |
| National Baking Co | 2,264 | 3,506½ |
| Minority interests | None | 1,335½ |
| Total | 2,264 | 4,841¾ |

On or about August 31, 1932, 10 of the 1,335½ preferred shares held by minority interests were purchased by the Omaha Co. and placed in its treasury. On May 16, 1933, the National Baking Co. purchased an additional 50 shares of this preferred stock, and on October 4, 1933, purchased another 50 shares. Thereafter during the fiscal years 1933 and 1934 the said stock was held as follows:

| Stockholder | Common stock | Preferred stock |
|---|---|---|
| | Shares | Shares |
| National Baking Co | 2,264 | 3,606½ |
| Minority interests | None | 1,225½ |
| Total shares outstanding | 2,264 | 4,831¾ |

The Omaha Co. issued to preferred stockholders certificates which had printed thereon article IV of the articles of incorporation as

amended from time to time, these amendments. varying only as to the amount of authorized common and capital stock. Article IV as amended on September 2, 1919, and filed March 3, 1920, provided as follows:

The authorized Capital Stock of this Corporation shall be the sum of $1,050,000 and shall be divided into shares of the par value of $100.00 each. Seven thousand five hundred (7,500) shares of said Capital Stock shall be seven (7) per cent cumulative preferred non-voting stock of the par value of One Hundred ($100.00) Dollars each, and shall take priority over all other stock as to assets and dividends; no mortgage shall hereafter be placed on any of the property of the Company without the written consent of the owners of not less than two-thirds of the outstanding stock of this class and issue. This stock shall receive seven (7) per cent annual dividends, payable one and three quarters (1¾) per cent quarterly, to-wit: January 1st, April 1st, July 1st, and October 1st of each year; and in the event of liquidation of the Company shall be paid at par, plus any accumulated dividends before any payment is made on any other class of stock; this preferred stock shall be non-voting, with the understanding, however, that in case the Company shall pass three consecutive annual dividends of seven (7) per cent per annum, then and in that event said stock will automatically become the sole voting stock of the Company and shall have the sole voting rights in the management and conduct of the business until all accrued dividends shall have been paid in full.

During the taxable years 768½ shares of the preferred stock of the Omaha Co. outstanding and held by the minority interests were represented by certificates issued subsequent to July 18, 1919. Of the aforesaid 768½ shares, 254½ shares represented original issues of such preferred stock subsequent to July 18, 1919, and 514 shares represented certificates issued subsequent to July 18, 1919, at the request of certain shareholders in exchange for a like number of shares originally issued prior to July 18, 1919. All other preferred stock held by minority interests was of the original issue made prior to July 18, 1919. The Omaha Co. did not pass three consecutive annual dividends of 7 percent per annum, and its preferred stockholders did not vote at any stockholders' meeting or otherwise either during or prior to the taxable years here involved.

Consolidated corporation income tax returns for the fiscal years ended June 30, 1932, 1933, and 1934 were filed with the collector of internal revenue at Omaha, Nebraska, by the National Baking Co., as parent corporation, including therein the net income of the petitioners. The respondent determined that the petitioners and the National Baking Co. were not during the taxable years members of an affiliated group as defined in section 141 (d) of the Revenue Act of 1932 and that they were not therefore entitled under the provisions of section 141 (a) of that act to the privilege of making consolidated returns for these years.

Under the provisions of section 141 (a) of the Revenue Act of 1932 petitioners and the National Baking Co. are entitled to the privilege

of filing consolidated returns of income if during the taxable years they were members of an "affiliated group" as defined in section 141 (d) of that act. The latter section reads as follows:

(d) DEFINITION OF "AFFILIATED GROUP".—As used in this section an "affiliated group" means one or more chains of corporations connected through stock ownership with a common parent corporation if—

(1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations; and

(2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations.

As used in this subsection the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.

As heretofore pointed out, all of the capital stock of the Burlington Mill & Elevator Co. during the taxable years was owned by the Omaha Co. The parties agree that these corporations are members of an "affiliated group" and thus entitled to the privilege of filing consolidated returns with the National Baking Co., their parent company, if the latter owns at least 95 percent of the voting stock of the Omaha Co. The parties differ as to what constitutes the voting stock, petitioners contending that only the common stock has the right to vote, while respondent contends that both the common and preferred stock have this right. If petitioners are correct in their contention, they are entitled to the privilege of filing consolidated returns with the National Baking Co. as it owned all of the common stock of the Omaha Co. If on the other hand respondent's contention is sustained, they are not entitled to this privilege as the National Baking Co. did not during the taxable years own 95 percent of the outstanding common and preferred stock of the Omaha Co.

In support of their contention, petitioners rely upon article IV of the articles of incorporation of the Omaha Co. providing that the preferred stock shall be nonvoting, and the decision of the Supreme Court of Missouri in *State* v. *Swanger*, 190 Mo. 561; 89 S. W. 872. In support of his contention, respondent relies upon the Constitution and statutes of the State of Nebraska, and the decision of the Illinois Supreme Court in *People ex rel. Watseka Telephone Co.* v. *Emerson* (1922), 134 N. E. 707.

Section 5 of Article XII of the Constitution of the State of Nebraska, in effect at the date of the organization of the Omaha Co. and for many years prior thereto, reads as follows:

The legislature shall provide by law that in all elections for directors or managers of incorporated companies, every stockholder shall have the right to vote in person or proxy for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to accumulate said shares and give one candidate as many votes as the number of directors multiplied by the number of shares of stock, shall equal, or to distribute

them upon the same principal among as many candidates as he shall see fit; and such directors or managers shall not be elected in any other manner.

Pursuant to this constitutional provision, the legislature of Nebraska enacted the following statute in 1915 (now section 24–117 of the Compiled Statutes of Nebraska for 1929):

24–117. Corporation voting by proxy. In all elections for directors or managers of incorporated companies, every stockholder shall have the right to vote in person or proxy, for the number of shares of stock owned by him, for as many of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to accumulate said shares and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock, shall equal, or to distribute them upon the same principle among as many candidates as he shall think fit, and such directors or managers shall not be elected in any other manner. Provided, the right of cumulative voting in this act shall not apply to stockholders of a corporation who own stock in another corporation engaged in competing line of business, nor to anyone who holds stock, the equitable owner of which is a stockholder in a corporation and engaged in a competing line of business, nor to their agent or representative.

In 1919 there was enacted by the Nebraska legislature, as a part of the Nebraska "Blue Sky Law", a provision with respect to the issuance of stock by corporations (ch. 259, sec. 11, Session Laws of 1919), which became effective July 18, 1919, reading in part as follows: "All common and preferred stock shall have equal voting power."

In 1921 the same legislature, in section 81–5408 of the Compiled Statutes of Nebraska for 1929, among other things, provided as follows: "All stock in the same corporation shall be of equal par value and all classes of stock shall have equal voting power."

Neither petitioners nor the respondent has invited our attention to any decision of the Nebraska Supreme Court deciding whether or not the above quoted provision of the Constitution of that state prohibited the issuance of nonvoting preferred stock, and apparently that court has never considered this question. Missouri and Illinois have similar constitutional provisions but the decisions of the Supreme Courts of these states construing these provisions are in conflict.

In *State* v. *Swanger, supra*, the Supreme Court of Missouri held that the purpose of the constitutional provision of that state was a guaranty to stockholders having the right to vote of cumulating their votes, that it had no reference to the contractual right of the stockholders *inter sese* of providing that preferred stockholders shall, or shall not, have the right to vote such stock, and that a law enacted by the General Assembly of Missouri permitting the stockholders themselves in their articles to issue preferred stock, and fix "its preferences, priorities, classification and the character

thereof", was not in violation of the Constitution and laws of that state.

In *People ex rel. Watseka Telephone Co.* v. *Emerson, supra,* the Supreme Court of Illinois reached a contrary conclusion and held that under a similar provision of the Illinois Constitution a corporation could not in its bylaws and articles of incorporation deprive the owners of preferred stock of the right to vote for directors or managers of the company. In reaching this conclusion the court pointed out that the Illinois Legislature had enacted several laws before the Constitution of 1870 was passed, and that these enactments and the provision of the Constitution showed that it was the public policy of that state to secure to each of the stockholders of a corporation the right to vote.

The conflict in the decisions relied upon by the respective parties renders them of little value in interpreting the provision of the Nebraska Constitution here involved. Whether or not it was the intention of the framers of that Constitution to give preferred stockholders the right to vote despite the fact that a corporation's charter contained a provision that they should have no voting rights and the preferred stock certificates contained a similar statement in our opinion can best be determined by considering the constitutional provision itself and subsequent legislation enacted by the legislature of Nebraska.

We are unable to agree with the argument of petitioner that the sole purpose of the constitutional provision was simply to abrogate the common law rule that a stockholder had only one vote irrespective of the number of shares held by him, could not cumulate his vote, and could not vote by proxy, and to define the voting rights of such stockholders as had the right to vote. We may concede that one of the purposes of the framers of this constitutional provision was to abrogate the above mentioned rule. Our problem, however, goes beyond this to another rule of the common law which permits a corporation to issue preferred stock and impose the condition that such stock should not have the right to vote, and we must determine whether the framers also had this rule in mind when they provided that "every stockholder shall have the right to vote * * *." We are of the opinion that they did. If they merely intended to define the voting rights of such stockholders as had the right to vote, they could easily have inserted words to disclose this intention. In the absence of such words, we believe it reasonable to presume that when they provided that *every* stockholder shall have the right to vote, they understood the meaning of the words used and intended to include all of the stockholders of a corporation and not the common stockholders alone. *Lincoln Gas & Electric Light Co.* v. *Watkins,*

204 N. W. 391; 113 Neb. 619; *Berens* v. *Byram*, 26 Fed. (2d) 953. The language used by the framers of the Nebraska Constitution is in our opinion plain and unambiguous, and there is therefore no occasion for construction or interpretation. *United States* v. *Missouri Pacific R. Co.*, 278 U. S. 269; *Commissioner of Immigration of Port of New York* v. *Gottlieb*, 265 U. S. 310; *State* v. *Heupel*, 210 N. W. 275; 114 Neb. 797; *State* v. *Marsh*, 187 N. W. 810; 108 Neb. 267.

Petitioners also argue that the legislature of the State of Nebraska recognized that the constitutional provision under discussion and the enactment of 1915 made pursuant thereto did not give preferred stock a voting power when it provided in chapter 259, section 11, Session Laws of 1919, that all common and preferred stock shall have equal voting power, and in 1921 enacted a similar provision. In other words, it is the position of petitioners that the enactments of 1919 and 1921 changed the existing law of Nebraska. Having concluded that the constitutional provision and enactment of 1915 gave every stockholder the right to vote, we obviously can not agree with petitioners. It is our best judgment that the laws of 1919 and 1921 were merely declaratory of the existing law and demonstrate the uniform and consistent policy of the Legislature of Nebraska to give every stockholder of a corporation the right to vote, thus carrying out the mandate given to it in section 5 of Article XII of the Constitution of Nebraska, *supra*.

It is our conclusion that under the Constitution and laws of the State of Nebraska, preferred stock is voting stock, and since during the taxable years the National Baking Co. did not own 95 percent of the outstanding common and preferred stock of the Omaha Co., the petitioners and the National Baking Co. were not members of an "affiliated group" and were not entitled to the privilege of filing consolidated returns permitted by section 141 of the Revenue Act of 1932. Cf. *Rudolph Wurlitzer Co.*, 29 B. T. A. 443; affd., 81 Fed. (2d) 971.

*Judgment will be entered for the respondent.*